IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROY WALKER, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:03-CV-1009-D |
| VS. | § |
| | § |
| NORRIS CYLINDER COMPANY, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION
 AND ORDER 

Plaintiff Roy Walker ("Walker") sues defendant Norris Cylinder

Company ("Norris") to recover for race discrimination and

retaliation, in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*,[1] contending that

_____

[1]Although Walker cites 42 U.S.C. § 1981 in his complaint and
asserts that his action is brought under § 1981, *see* Compl. ¶ 3, he
does not explicitly allege such a claim and instead asserts an
action under Title VII. Norris does not view the complaint as
asserting a § 1981 cause of action, because it moves for summary
judgment on all claims asserted against it, *see* D. Br. 1, but does
not specifically address § 1981. The court likewise does not
construe his complaint as asserting this cause of action. The
court reached a similar result in *Grace v. Bank of America*, 2003 WL
23095993, at *1 n.1 (N.D. Tex. Dec. 23, 2003) (Fitzwater, J.)
(addressing motion to dismiss). The same attorney who represented
the plaintiff in *Grace* represents plaintiff in this case, and the
complaints in both cases are similarly constructed. If in future
cases counsel intends to file § 1981 claims on behalf of his
clients, he should clearly allege such a cause of action rather
than merely advert to the statute.
    Walker states in his complaint that Norris' actions had a
"disparate impact" on him, *see* Compl. ¶ 24, and he refers in his
brief to "statistical disparities" that disadvantaged African-
Americans, *see* P. Br. 2. He does not, however, clearly allege the
elements of a disparate impact cause of action and does not refer
to such a claim in his response brief, and the court has not
construed his complaint as asserting such a claim.
    Walker also refers in his complaint, *see* Compl. ¶ 3, and in

Norris terminated his employment and otherwise discriminated against him based on his African-American race, retaliated against him for complaining about discrimination, and subjected him to a racially-hostile work environment. Norris moves for summary judgment. For the reasons that follow, the court grants the motion in part and denies it in part.

I

Norris manufactures metal tanks.[2] Walker was a billet saw operator at Norris for over 14 years. Billet saw operators at Norris use a billet saw to cut steel beams, called billets, into smaller pieces, called mults. While at Norris, Walker received written worksheets each day that specified a minimum and maximum weight range for each mult to be cut. After Walker cut each mult, he was required to weigh it to ensure that it fell within the target weight range. The scale automatically recorded the weight of each mult weighed, and Norris used the recorded weights to determine how much to pay its steel supplier.

In November 2001 Norris changed from square-shaped billets to

_____

his brief, *see* P. Br. 1, to Norris' failure to provide him with a reasonable accommodation. There is no apparent legal basis, however, for alleging that a person is entitled to be reasonably accommodated based on his race, and the court need not address such a claim if made. *See* D. Reply Br. 2 (noting irrelevance of reasonable accommodation claim).

[2]The court recounts the evidence favorably to Walker, as the summary judgment nonmovant, and draws all reasonable inferences in his favor. *See, e.g.*, *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

round ones.   Unlike the square billets, the round billets had a tendency to roll when they were on the table.   On November 29, while Walker was using the magnet designed for the square billets to move a round billet, a 400 lb. billet almost rolled off the table onto his foot.   His supervisor, Tim Shiflet ("Shiflet"), was present when this occurred.   Walker informed Shiflet that he wanted to see the Plant Manager, Brian McGuire ("McGuire").   Shiflet responded that he could not see him and asked him why he wanted to speak with McGuire.   Walker responded, "You almost let this round steel run off the table on my foot, could have hurt me."   D. App. 33.   Shiflet "blew up" and yelled at Walker that he was sick and tired of his telling management how to run the plant, and he also told Walker that he was sick of him.   *See id*. at 33-34, 70-71.   He said, "I want you to go," and "I'll get me somebody to run this Labor Grade 3 job."   *Id*. at 33.   Later that day, Norris installed a safety device to prevent the round billets from rolling off the table.   The next day, Walker met with the Production Manager, Fred Grindle ("Grindle"), about the incident.   During the meeting, Walker blamed Shiflet for failing to install proper safeguards that could have prevented the accident.

After Norris converted to round billets, saw blades began sustaining more damage than usual.   When a blade is broken, production on a saw stops and someone must replace the blade, which may take anywhere from ten minutes to one hour.   Shiflet often

- 3 -

complained to Walker that he was damaging saw blades and that it was his fault.  In doing so, Shiflet raised his voice, but he was not physically violent.  Shiflet's criticisms of Walker's performance were regular, often more than once daily.

From this point on, Walker regularly complained to Shiflet that he was discriminating against him.  He continually informed Shiflet that he felt that Shiflet was discriminating against him by treating him differently from his coworkers.  Walker asked to speak to upper management about the discrimination, but Shiflet would not permit him to do so.  He was threatened with his job security if he chose to continue to discuss racial issues with upper management.

Walker called a meeting with Grindle to discuss the blades being damaged and Shiflet's complaints that Walker was responsible. In meetings with Grindle and Shiflet, Walker stated that he was running the saw in the same manner as did Caucasian saw operators. In an April 26, 2002 meeting, Grindle, Shiflet, and Walker discussed problems with Walker's performance, his opinions on how the operation could be improved, and plans for further evaluation. Walker pointed out several problems with the blades being damaged because of Norris' conversion to round billets.  He told Grindle and Shiflet that the same problems occurred with Caucasian operators.  Walker also informed Grindle that Shiflet was harassing him and treating him differently from other coworkers and that he had been threatened with termination.  Grindle advised Walker that

they would begin evaluating his work.  Shiflet was assigned to observe Walker operate the billet saw and positioned himself near the saw where he could observe but not interfere.

On May 2, 2002 Walker again met with Grindle and Shiflet. Shiflet told Grindle that Walker was damaging saw blades and letting mult end cuts fall off in the saws.  Walker explained to Grindle the problem he was having with the saws, and Grindle responded that it was Walker's responsibility to operate the saws under all conditions.  Walker was sent home early after this meeting and was not allowed to complete his full 12-hour shift.

On May 6 and 7, 2002 Shiflet observed Walker's work all day long.  On May 7 Shiflet instructed Walker not to make end cuts on a billet if it did not have at least three inches clamped in an index holding the billet at the end.  Shiflet avers that, the same day, he saw Walker violate his instruction, which caused extensive damage to the blade and to the saw itself.  Walker contends that he could not see the end of the billet to know whether there were at least three inches clamped in the index prior to cutting.

The same day, while Shiflet observed Walker's work, Walker cut and weighed a mult that exceeded the target weight.  Rather than reject the mult, he voided out the scale's reading and cut a new mult.  He then weighed the new mult twice and sent both the overweight mult and the new mult down the production line.  Walker maintains that he had been trained to send a mult down the

production line, even if it was overweight, if the mult would still make a part. Another Norris employee, Wayne Stoker ("Stoker"), avers that he was trained the same way. Both maintain that Caucasian employees participated in this practice, including switching out the mult weights, without being disciplined.

On May 7, 2002 Shiflet and Grindle met with Walker to discuss both incidents. Walker was given one employee discipline notice for failing to carry out supervisor instructions and a separate notice for falsifying company records. Afterwards, Grindle and Shiflet recommended to the Norris Cylinder Management Review Committee ("Committee") that Walker be suspended for one week for failing to carry out supervisor instructions and that he be terminated for falsifying company records. The Committee accepted both recommendations and terminated Walker's employment the same day.

II

Norris first moves for summary judgment on Walker's race discrimination claim.

A

As a threshold matter, the court must determine whether Norris moves for summary judgment as to each component of this cause of action. In its opening brief, Norris treats this claim as if it is based only on Walker's termination. *See* D. Br. 7-9. In the introduction section of his opposition brief, however, Walker

posits that Norris discriminated against him "by solely monitoring and criticizing his work performance, which was only done to employees of African-American descent[.]" P. Br. 2.[3] He does not appear to address his termination until the part of his brief that pertains to his retaliation claim. *See, e.g., id.* at 19. In Norris' reply brief, it recognizes that Walker bases his discrimination claim on the monitoring and criticizing of his work performance. *See* D. Reply Br. 4. Accordingly, in view of the parties' briefing, the court construes Walker's Title VII race discrimination claim to be predicated on his termination and on Norris' conduct in monitoring and criticizing his work performance.

Because Norris did not in its combined opening brief and motion move for summary judgment dismissing the work monitoring- and criticism-based components of Walker's race discrimination claim (apart from doing so in the context of his hostile work environment claim), the court declines to grant summary judgment dismissing these elements. *See John Deere Co. v. Am. Nat'l Bank*, 809 F.2d 1190, 1192 (5th Cir. 1987) (holding that it is error for court to grant summary judgment on ground not properly raised).[4]

---

[3]He also includes a similar argument as a basis for his hostile work environment claim. *See* P. Br. 15.

[4]The fact that Norris addresses these components in its reply brief is of course insufficient to raise the issue. *See Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.) (declining to consider party's argument raised for first time in reply brief).

B

The court now considers Norris' motion to the extent addressed to Walker's termination-based race discrimination claim. Because Norris will not have the burden of proof at trial on Walker's claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support it. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, Walker must then go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory if he fails to meet this burden. *Little,* 37 F.3d at 1076.

In the context of a Title VII race discrimination claim, Walker must present sufficient direct or circumstantial evidence that would permit a reasonable trier of fact to find that his African-American race was a motivating factor in the decision to discharge him. *See, e.g., Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for race, color, religion, sex, or national origin discrimination). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v.*

*Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3. (5th Cir. 2003) (Fitzwater, J.) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). Because Walker has not adduced direct proof of race discrimination, he must rely on circumstantial evidence.

A circumstantial case of race discrimination may be proved using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas* consists of three stages. First, Walker must establish a prima facie case of discrimination, which "creates a presumption that [Norris] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to Norris to articulate a legitimate, nondiscriminatory reason for discharging Walker. *See id.* at 253. If Norris meets its production burden, Walker must "offer sufficient evidence to create a genuine issue of material fact . . . that [Norris'] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2001) (age discrimination case).[5]

---

[5]Walker does not rely on a mixed-motive theory, so the court need not address the part of *Rachid* that addresses that means of ground for establishing discrimination.

C

This is a work-rule violation case because Norris maintains that it terminated Walker for falsifying company records.[6]  "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)).  The court concludes that Walker has created a fact issue with regard to both alternatives.

First, Walker has made a showing that he may not have violated the work rule.  Walker admits that he cut and weighed an overweight mult.  He also acknowledges that, rather than reject it, he voided out the original record that showed the overweight mult, cut a new one, twice weighed the new mult, and sent both down the production line.  But he maintains that his actions were in compliance with, not in violation of, Norris' procedures.  He contends he was instructed by at least two supervisors that, if an overweight mult would make a part, it was proper to void out the weight reading and

_____

[6]Walker does not expressly or inferentially dispute that this is a work-rule violation case.  Additionally, it does not appear that he can establish a prima facie case under the formulation that requires that he was replaced by a person who is not African-American, and he makes no attempt to satisfy his prima facie burden on that basis. *See* P. Br. 9 (setting out prima facie case elements that do not include replacement by person outside protected class).

move the mult down the line.  In his affidavit, Walker avers that "[a]ll of the billet saw operators follow this practice."  P. App. 5.  Moreover, Wayne Stoker ("Stoker"), a current Norris employee, avers in his affidavit that he was also instructed by two supervisors to send certain overweight mults down the line.  A reasonable trier of fact could find that Walker had been instructed as he contends, and that his actions did not violate any work rule.

Second, even if Walker's acts did violate the work rule, he has adduced evidence that would permit a reasonable trier of fact to find that "white employees who engaged in similar acts were not punished similarly."  *Mayberry*, 55 F.3d at 1090.  "To establish a prima facie case in this manner, [Walker] must show that white employees were treated differently under circumstances 'nearly identical' to his."  *Id.* (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570-71 (Former 5th Cir. 1982)).  Walker and Stoker both aver in their affidavits that, on numerous occasions, they witnessed Caucasian billet saw operators, in Shiflet's presence, weigh acceptable mults twice and send overweight mults down the production line.  Although Walker does not aver specifically that the Caucasian employees were not also terminated for the practice, the court infers, based on two grounds, that they were not.  First, Walker and Stoker had no reason to point to

Caucasian employees' use of this practice except to corroborate that Walker was treated disparately.  Second, Norris neither denied that Caucasians took part in the practice nor alleged that they were terminated for doing so.  *See Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000) (holding that, at the summary judgment stage, the court must draw all reasonable inferences in favor of the non-moving party).  Viewing the evidence in the light most favorable to Walker, the court holds that a reasonable trier of fact could find that he engaged in the same practices as Caucasian employees in Shiflet's presence and was terminated for the practices, while the Caucasian employees were not.  Thus Walker has established a prima facie case of race discrimination based on his termination for a work-rule violation.

D

To rebut the presumption of unlawful discrimination raised by Walker's prima facie case, Norris must produce evidence that it discharged Walker for a legitimate, nondiscriminatory reason.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Norris "'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  *Id.* at 507 (quoting *Burdine*, 450 U.S. at 254-55) (emphasis omitted).  Norris' burden is one of production, not proof, and involves no

credibility assessments.   *See, e.g.*, *West*, 330 F.3d at 384-85. Thus "it is sufficient if [Norris'] evidence raises a genuine issue of fact as to whether it discriminated against [Walker.]" *Burdine*, 450 U.S. at 254; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).   If Norris meets its burden, then the presumption of discrimination raised by Walker's prima facie case is rebutted and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.

Norris has met its burden of production.   In its brief, it points to summary judgment evidence that it terminated Walker's employment for falsifying company records, in violation of a rule contained in the employee handbook.   This is the same reason listed on the Personnel Action Notice that Shiflet and Grindle signed the day Walker was discharged.   Walker admitted that he voided out an overweight mult's weight reading and weighed an acceptable mult twice.   An employee's violation of a company work rule is a legitimate, nondiscriminatory reason for discharging him.   *See, e.g., Dean v. Kimberly-Clark Corp.*, 2005 WL 309509, at *3 (N.D. Tex. Feb. 8, 2005) (Kinkeade, J.) (holding that employer had satisfied its burden of articulating a legitimate, nondiscriminatory reason for discharging employee by offering proof that to establish that it discharged employee for violating disciplinary policy and work rule).

E

Because Norris has met its burden of production, the presumption of discrimination raised by Walker's prima facie case has dropped out of the picture.  In order for Walker to survive summary judgment, he must create a fact issue regarding the ultimate question of discrimination.  He may satisfy his burden by showing "that the legitimate reasons offered by [Norris] were not its true reasons, but were a pretext for discrimination."  *Reeves*, 530 U.S. at 143.  That is, Walker must produce sufficient evidence for a reasonable trier of fact to find either that Norris' proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated Norris' decision to terminate him.  *See Burdine*, 450 U.S. at 256.  "[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).

For the reasons set out *supra* at § II(C), the court holds that Walker has introduced sufficient evidence to create a genuine issue of fact regarding whether he violated Norris' policies.  If the trier of fact were to find that Walker did not violate Norris' policies, as Norris contends, it would then be permitted to "infer the ultimate fact of discrimination from the falsity of [Norris'] explanation."  *Id.* at 147.  Even if Walker did violate Norris'

policies, he has also produced sufficient evidence for a reasonable trier of fact to find that he was disciplined differently from Caucasian employees who also violated the policies.   There are therefore genuine issues of material fact as to the veracity of Norris' explanation and whether Walker's African-American race motivated Norris' decision to terminate him.   Accordingly, the court denies Norris' motion for summary judgment as to Walker's race discrimination claim.

F

Norris objects to certain evidence that the court has relied on in reaching its decision.   The court now rules on the objections.[7]

Walker states in his affidavit: "If a mult will make a part, I was taught to make the part even though the mult did not meet specifications."   P. App. 5.   Second, Walker avers: "Shiflet has been present on numerous moments when this practice/procedure was conducted by other Caucasian billet saw operators.   I have witnessed this practice take place in his presence."   *Id.*   Norris objects to this testimony on the grounds that it is conclusory and that Walker's affidavit fails to set out adequate facts and/or

---

[7]The court does not typically wait until after it has explained its ruling on the merits to address evidentiary objections because the rulings impact the evidence to be considered in deciding the merits of the summary judgment motion.   It is doing so in this case, however, because its reasoning and the relevance of the objections are more readily understood in light of the preceding decision on the merits.

foundation and that the statements are vague and fail to set out an adequate basis to conclude that the statements are within Walker's personal knowledge.  The court overrules the objections.

The averments are not so vague, conclusory, or without foundation that they cannot be used as competent summary judgment evidence.  *Cf. Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) ("[T]he papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party").  Moreover, Walker avers that each of the facts set forth in his affidavit is within his personal knowledge and is true and correct, *see* P. App. 1, and the court does not conclude otherwise.  Moreover, although Fed. R. Civ. P. 56(e) requires that "opposing affidavits shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence," Rule 56(e), "[t]he affidavit need not affirmatively state that [he] is competent to testify so long as the record as a whole shows [his] testimony meets the requirements of Rule 56."  *Crank v. Crank*, 1997 WL 538736, at *4 (N.D. Tex. Aug. 21, 1997) (Fitzwater, J.) (citing *Lodge Hall Music*, 831 F.2d at 80; *Brueggemeyer v. Am. Broad. Cos.*, 684 F. Supp. 452, 463 (N.D. Tex. 1988) (Fitzwater, J.)), *aff'd*, 146 F.3d 868 (5th Cir. June 4, 1998) (unpublished table decision) (per curiam).  Walker's statements merely recount events that he says he personally observed.  His position as an employee, coupled with averments that demonstrate

- 16 -

his knowledge of the relevant company operations, establish sufficient personal knowledge for the facts asserted. *See FSLIC v. Griffin*, 935 F.2d 691, 702 (5th Cir. 1991) (holding that affiant's position as bank vice president and senior attorney demonstrated personal knowledge as to some statements in summary judgment affidavit). To the extent Norris has objected to other statements within Walker's affidavit, the objections are moot because the court has not relied on the evidence in deciding Norris' motion.

The court also relies in part on statements made in the affidavit of Stoker, another Norris employee. Norris objects to this affidavit in its entirety on the ground Walker failed to list him in his Rule 26(a)(1) initial disclosures as an individual likely to have discoverable information. Although Walker did not make the required disclosure, Norris has not shown why it has been prejudiced by this failure. Absent such a showing, the court declines to strike the affidavit at the summary judgment stage based on the Rule 26(a)(1) violation. *See Snowman v. IMCO Recycling, Inc.*, 347 F.Supp.2d 338, 346 (N.D. Tex. 2004) (Lindsay, J.) (declining to strike summary judgment affidavit where court observed, *inter alia*, that objecting party had not shown harm or prejudice from failure to disclose).

Norris objects to the following statement in Stoker's affidavit: "When I trained on the billet saw, Carl Gregg and Tim Shiflet told me if I feel that a mult would make a part to put it

on the line regardless of its size." P. App. 8. Norris first objects on the basis of hearsay, which the court overrules. Gregg's and Shiflet's statements are not hearsay because they are not offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). They are offered simply to prove that the statements were made——i.e., that Gregg and Shiflet gave Stoker these instructions during training——regardless of their truth. Norris also objects on the basis that the statement fails to set out an adequate foundation and is too ambiguous to be considered summary judgment evidence. The objection lacks merit. Stoker is simply relaying what he says he was instructed; his statements do not require any additional foundation, nor are they conclusory.

Norris objects to Stoker's statements about observing Caucasian saw operators switching mult weights in Shiflet's presence. It challenges the statements as conclusory and as failing to set out an adequate foundation. For the same reasons as above, the court holds that the objection lacks merit.

Norris objects on the basis that Stoker could not have known that the mults that were switched were overweight, because he would not know the weight specifications for the mults to be processed that day. The court disagrees. Stoker would not need to know the

- 18 -

weight specifications or that a mult was overweight to know that he was observing the switching of mults.

Accordingly, Norris' objections to these statements are overruled.  To the extent Norris has objected to other statements in Stoker's affidavit, the objections are moot because the court has not relied on the evidence in deciding Norris' motion.

Norris' objections to the written statement of Rayfus Wady are moot because the court has not relied on the statement in deciding this motion.

III

Norris also moves for summary judgment as to Walker's claim of a racially hostile work environment.

A

To establish a prima facie case of hostile work environment, Walker must show that "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; [and] (4) the harassment complained of affected a term condition or privilege of employment." *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001).[8]  "For harassment to affect a 'term,

_____

[8]In some circumstances, a plaintiff asserting a claim of hostile work environment must also prove a fifth element: that "the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Celestine*, 266 F.3d at 353.  But where, as here, "the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only

- 19 -

condition, or privilege of employment' it must be 'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999)); *see also Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (sexual harassment case). "Actionable harassment must involve 'racially discriminatory intimidation, ridicule[,] and insults.'" *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)) (applying Title VII case law to a claim brought under 42 U.S.C. § 1983); *see also Harris*, 510 U.S. at 21. "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker*, 214 F.3d at 625).

B

Walker admits that he was never subjected to racial slurs or derogatory remarks. Rather, to support his racial harassment claim, he points to Shiflet's observation and criticism of his work. He also cites evidence that he was disciplined differently

the first four of the elements listed above." *Id.; see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

from Caucasian employees for the same conduct.

It is not altogether clear that Shiflet's mere observation and criticism, unaccompanied by any hint of racial slurs or derogatory remarks or race-based comments, constitute harassment at all, as the second element of the prima facie case requires.[9]   Even assuming *arguendo* that Shiflet's actions do constitute harassment, however, they are not the type of "racially discriminatory intimidation, ridicule[,] and insults" that are "severe or pervasive enough to create an objectively hostile or abusive work environment."   *Walker*, 214 F.3d at 625 (holding that fact issue existed as to racial harassment where plaintiffs were subjected to, *inter alia*, "comparisons to slaves and monkeys, derisive remarks regarding their African heritage, patently offensive remarks regarding the hair of African-Americans, and conversations in which a co-worker and supervisor used the word 'ni--er'").   Shiflet's actions, if admissible, may be probative to the factfinder in the pretext portion of Walker's disparate treatment claim.   But they are insufficient to permit a reasonable trier of fact to find that Walker was subjected to a racially hostile work environment.   Norris' motion is granted with respect to Walker's hostile work environment claim.

_____

[9]The court does not suggest that constant observation and criticism of a person of one race by someone of another race can *never* amount to a racially hostile work environment.   It holds only that Walker's evidence is insufficient to permit a reasonable trier to fact to find such an environment in this case.

IV

Norris moves for summary judgment dismissing Walker's retaliation claim.

A

Where, as here, Walker offers no direct evidence that Norris retaliated against him, the method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies.   *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994) (holding that *McDonnell Douglas* applies when plaintiff has presented only circumstantial evidence of retaliatory animus)). Walker must first establish a prima facie case of retaliation.  To do so, he must demonstrate that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.  *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).  The burden then shifts to Norris to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken.  Norris' burden is one of production, not of proof. If Norris meets its production burden, Walker must adduce evidence that would permit a reasonable trier of fact to find that "[his] termination . . . would not have occurred 'but for' [his] protected conduct."  *Montemayor*, 276 F.3d at 692.  "At the summary judgment stage, the nonmovant need only point to the existence of a genuine

- 22 -

issue of material fact." *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. 2002). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long,* 88 F.3d at 305 n.4.

B

1

Walker has met the first element and "has engaged in activity protected by Title VII if he has . . . 'opposed any practice made an unlawful employment practice' by Title VII." *Id.* at 304 (quoting 42 U.S.C. § 2000e-3(a)). For opposition to be protected, Walker must have had "at least a 'reasonable belief' that the practices [he] opposed were unlawful." *Id.* (quoting *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981)).

Walker contends that Norris retaliated against him by discharging him in part for making a safety complaint to Grindle in November 2001. At that time, Norris was experimenting with using round billets rather than square ones. On November 29 Shiflet instructed Walker to move a round billet with the magnet normally used to move square billets. While Walker was moving the round billet in Shiflet's presence, the billet began to roll and nearly rolled off the table onto Walker's foot. The next day, Walker complained to Grindle about the incident, and he contends that this

complaint was part of the impetus for his discharge.

Even if Walker is able to prove his allegation, however, the November 2001 complaint is not protected activity under Title VII. As noted, Title VII prevents an employer from retaliating against an employee who opposes an employment practice that Title VII makes unlawful or one that the employee reasonably and in good faith believes Title VII makes unlawful.[10]   Even if Walker subjectively believed that the practices he opposed were unlawful under Title VII, his belief would not have been objectively reasonable.  *See Wilson v. Delta State Univ.*, 2005 WL 1939678, at *3 (5th Cir. Aug. 12, 2005) (per curiam) (unpublished opinion) (holding that employee's belief about employment practice is not reasonable if it is settled law that practice is not unlawful within Title VII). Therefore, the November 2001 complaint is not a basis on which Walker can establish a prima facie case of retaliation.

Walker also points, however, to complaints of discrimination that he made throughout the time Shiflet was his supervisor.  He contends that he filed a discrimination complaint against Shiflet in May or June 2001.  He also avers that, in meetings with Grindle and Shiflet to discuss Walker's damage to saw blades, he told them that he was operating the saw in the same manner as Caucasian

---

[10]Of course, Title VII would protect an employee from a work environment that is unsafe or abusive as a result of race-based harassment.   But Title VII does not protect employees from workplace hazards that lack discriminatory intent or impact.

operators and that he was being singled out because of his race. He specifically asserts that, in a meeting in April 2002, the month before he was terminated, he informed Grindle that Shiflet was harassing him, that he was being treated different from Caucasian saw operators, and that he had been threatened with termination. Regardless whether Shiflet had actually been discriminating against him, Walker could reasonably have believed that he was discriminated against by being singled out for damaging saw blades when Caucasian employees were not. His complaints of discrimination are thus protected activities, and Walker has produced sufficient evidence to meet the first element of a prima facie case.

2

The second element is uncontested; Walker suffered an adverse employment action when he was discharged.

3

As to the third element, the initial requirement that a plaintiff show a "causal link" between protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find. *Montemayor*, 276 F.3d at 692; *see Khanna v. Park Place Motorcars of Houston, Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal"). Walker has adduced evidence showing that he made complaints about Shiflet to

Grindle, that both Shiflet and Grindle had knowledge of the complaints, and that Shiflet and Grindle recommended that the Committee terminate Walker's employment.  This is sufficient to make a prima facie showing of causation.  *See Long*, 88 F.3d at 306. The fact that the Committee actually terminated Walker does not break the chain of causation because the Committee accepted Shiflet and Grindle's recommendation without conducting its own independent investigation into the allegations against him.  *See id.* at 307.

C

Norris' proffered legitimate, nonretaliatory reason for discharging Walker is that he falsified company records.  As the court explains *supra* at § II(D), Norris has met its burden of production.

D

Walker is thus obligated to introduce evidence that creates a genuine issue of material fact regarding the ultimate question whether Norris unlawfully retaliated against him.  He has adduced evidence showing that he made numerous complaints about Shiflet's discrimination going as far back as May or June 2001.  He has also introduced evidence that Shiflet observed his work performance individually for a period of time, yet Caucasian saw operators who regularly broke saw blades were not similarly observed.  A reasonable trier of fact could find, for example, that Shiflet and Grindle became frustrated with Walker's numerous complaints of

- 26 -

discrimination and undertook a course of conduct that was designed to secure his termination. From this evidence of pretext, a reasonable trier of fact could find retaliation.

Accordingly, Norris' motion for summary judgment on Walker's retaliation claim is denied.

*     *     *

Norris' December 1, 2004 motion for summary judgment is granted in part and denied in part.

**SO ORDERED.**

September 19, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE